# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-804V

|  |  |
|---|---|
| TRENNESE HOWARD-LUCAS, | Chief Special Master Corcoran |
| Petitioner, | Filed: March 24, 2026 |
| v. |  |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Elizabeth Andary, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On June 1, 2023, Trennese Howard-Lucas filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered from a shoulder injury related to vaccine administration ("SIRVA") due to a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine administered on January 6, 2022. Petition at 1, ECF No. 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters, and although Respondent ultimately conceded entitlement, the parties could not informally resolve damages.

For the reasons set forth below, I find that Petitioner is entitled to compensation in the amount of **$143,000.00, for actual pain and suffering, plus $2,657.45 in past unreimbursable expenses, for a total of $145,657.45.**

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in a specific case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may also rely on my own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Hum. Servs.*, 109 Fed. Cl. 579 (2013).

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussions in Section II of *Matthews v. Sec'y of Health & Hum. Servs.*, No. 22-1396V, 2025 WL 2606607, at *2-3 (Fed. Cl. Spec. Mstr. Aug. 13, 2025).

## II.    The Parties' Arguments

The parties agree Petitioner should be awarded $2,657.45 for past unreimbursed expenses. *See* Br. at 1; *see also* Resp. at 2, n.1. Thus, the only area of disagreement is the amount of compensation which should be awarded for actual pain and suffering. Petitioner seeks $150,000.00 (Br. at 1), while Respondent proposes a lesser award of $100,000.00 (Resp. at 2).

In arguing for a significant pain and suffering award, Petitioner contends that her medical records establish a "serious and debilitating injury that greatly impacted her health and wellbeing" and continues to this day. Br. at 12, 16. She describes her injury course and states that her "extensive" course of treatment, following an injury with a "rapid and severe [] onset," has "ultimately produced mixed results and continued suffering." *Id.* at 15. She highlights that her course of treatment has included several medical examinations, diagnostic procedures (i.e., an EMG and MRI), six steroid injections, arthroscopic surgery, and participation in over 30 physical therapy ("PT") sessions – without complete relief of her symptoms. *Id.* at 15-16.

Petitioner explains that as a result of her vaccine injury, she has experienced depression, she has used her paid time off on medical visits instead of vacations or spending time with her family, and she has endured a financial burden as a result of her medical bills, thus adding to her stress. Br. at 16-17 (citing Ex. 18). She also notes difficulties with activities of daily living ("ADLs"), such as sleeping, playing with her grandchildren, and maintaining an active social and physical life (i.e., going out with friends, bowling, fishing, and playing pool). *See id.*

Thus, Petitioner favorably compares the duration and severity of her medical treatment with those experienced by the petitioners in *Reed, Binette, Dawson-Savard,* and *Rafferty,*[3] all featuring past pain and suffering awards ranging between $127,500.00 and $160,000.00. Br. at 19-22. She insists that her injury and treatment course warrant a greater award in past pain and suffering than most of the petitioners in her cited cases. *Id.* at 23.

Respondent, by contrast, emphasizes evidence showing Petitioner had an injury

---

[3] *Reed v. Sec'y of Health & Hum. Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.000 for past pain and suffering); *Binette v. Sec'y of Health & Hum. Servs.,* No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. July 8, 2019) (awarding $130,000.00 for past pain and suffering and $1,000 per year in future pain and suffering); *Dawson-Savard v. Sec'y of Health & Hum. Servs.,* No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020) (awarding $130,000.00 for past pain and suffering, plus future pain and suffering and lost wages awards); and *Rafferty v. Sec'y of Health & Hum. Servs.,* No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00 for past pain and suffering).

that was "moderate to severe with an arthroscopic surgery." Resp. at 7. Specifically, Respondent claims that Petitioner only had one arm-related appointment during her first four-and-a-half months post vaccination. *See id.* Thereafter, Respondent notes that Petitioner's care included 34 PT sessions (with both pre- and post-surgical rounds), four cortisone injections, and one arthroscopic surgery over the course of over two years. *Id.* Respondent highlights that Petitioner was discharged from PT in March of 2024, and she only sought further care with two additional steroid injections (after the parties' damages discussions began and later reached an impasse), in June and September of 2024. *Id.* As guidance, Respondent cites other decisions featuring pain and suffering awards ranging from $95,000.00 to $105,000.00, respectively – *Hunt, Shelton, Martin,* and *Crawford.*[4] *Id.* at 13-15.

Petitioner replies and maintains that her injury has continued for three years and three months, "as she continues to experience high levels of pain and loss of [range of motion ("ROM")] to this day." Reply at 2. She also asserts that Respondent's contention that she delayed seeking care is not supported by the filed record. *See id.* And Petitioner argues that Respondent's contention that Petitioner sought treatment (i.e., two additional steroid injections) "simply to bolster her claim for damages" is "entirely without merit." *Id.* at 3.

### III.    Appropriate Compensation for Petitioner's Past Pain and Suffering

In this case, awareness of the injury is not disputed. Petitioner was a competent adult with no impairments that would impact her consciousness of her injury. Therefore, I analyze principally the severity and duration of the injury. When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, and all assertions made by the parties in written documents.

The record shows that following her vaccination, Petitioner (age 55 at the time) suffered a moderately severe SIRVA causing her to report shoulder-related symptoms within approximately one month and five days after vaccination, and to seek treatment for approximately two and a half years thereafter. Petitioner first sought care for left shoulder pain with a visit to her employee health services department on February 11, 2022, without receiving a treatment plan specific to the left shoulder thereafter. *See* Ex. 2 at 43. But she subsequently did not receive *consistent treatment* specific to the left shoulder

---

[4] *Hunt v. Sec'y of Health & Hum. Servs.,* No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 for past pain and suffering); *Shelton v. Sec'y of Health & Hum. Servs.,* No. 19-279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021) (awarding $97,500.00 for past pain and suffering); *Martin v. Sec'y of Health & Hum. Servs.,* No. 19-830V, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021) (awarding $100,000.00 for past pain and suffering); and *Crawford v. Sec'y of Health & Hum. Servs.,* No. 19-544V, 2024 WL 1045147 (Fed. Cl. Spec. Mstr. Feb. 5, 2024) (awarding $105,000.00 for past pain and suffering).

until May 18, 2022 (over four months later) – despite having at least one orthopedic visit for knee issues during that gap in time. Ex. 5 at 10; Ex. 8 at 18-25. Petitioner did not provide an explanation for this slight gap in care early on in the course of her treatment (e.g., Exs. 10, 18). Although she attested to worsening pain during that time (i.e., Ex. 18 at 1-2), I consider the fact that she managed to cope with her pain without treatment during this time to speak to a somewhat moderate degree of severity of Petitioner's injury. Still, she thereafter followed up consistently without any similarly lengthy gaps in treatment until September 17, 2024 – thus approximately two years and nine months post vaccination (a fact to be discussed in more detail below).

Despite her initial "delay" in seeking consistent medical care for her left shoulder symptoms, Petitioner's treatment for her SIRVA was fairly aggressive overall. Particularly relevant is her treatment with a total of six steroid injections, x-rays, two MRIs, an EMG, 34 PT sessions (both pre- and post-operative rounds), and one arthroscopic surgery (in October 2023 – consisting of a left shoulder arthroscopic debridement of partial subscapularis tendon rotator cuff tear, acromioplasty, and rotator cuff repair[5]). Petitioner's injury resulted in some lingering effects that do not require ongoing care, including expected SIRVA sequalae such as pain and ROM restrictions. Despite such aggressive treatment, the record fails to contain evidence that Petitioner ever treated her injury with over-the-counter and/or prescription medications (aside from those prescribed following surgery), thus a small mitigating factor herein.

Additionally, Petitioner described severe pain, consistently ranging from a 7-10/10 degree throughout her treatment course. *See,* e.g., Ex. 5 at 7-8 (a June 24, 2022 pain rating of 10/10); Ex. 2 at 15-16 (a July 27, 2022 pain rating of 9/10); Ex. 12 at 1-3 (a November 2, 2023 pain rating of 8/10). And the only instances involving a reported pain level below a 5/10 (thus moderate levels) were exceptions. *See* Ex. 15 at 10-13 (a September 2022 report of pain rated at a 4-5/10 and in direct response to her receipt of

---

[5] Though not disputed by Respondent, I will note that Petitioner's rotator cuff tear is not entirely consistent with a SIRVA. *See,* e.g., *Lang v. Sec'y of Health & Hum. Servs.,* No. 17-995V, 2020 WL 7873272, at *13 (Fed. Cl. Spec. Mstr. Dec. 11, 2020) (finding that evidence of the existence of a rotator cuff tear does not *per se* preclude a finding that a Table SIRVA exists, but the "key questions is whether [the] petitioner's own clinical history indicates that [his] shoulder pathology wholly explains [his] symptoms independent of vaccination."). *Lang* also described a Health and Human Services-Centers for Disease Control joint study which found that rotator cuff tears were present in approximately 40% of a cohort of compensated SIRVA cases. *See* 2020 WL 7873272, at *13; *see also Grossman v. Sec'y of Health & Hum. Servs.,* No. 18-13V, 2022 WL 779666, at *17 (Fed. Cl. Spec. Mstr. Feb. 15, 2022) (citing the Atanasoff article relied upon in creating the SIRVA QAI, for the proposition that "MRI findings . . . such as rotator cuff tears, may have been present prior to vaccination and became symptomatic as a result of vaccination-associated synovial inflammation"); *accord* 42 C.F.R. § 100.3(c) (describing SIRVA as "an inflammatory reaction" within the musculoskeletal system of the shoulder). *Peka v. Sec'y of Health & Hum. Servs.,* No. 20-1099V, 2025 WL 551367, at *6 (Fed. Cl. Spec. Mstr. Jan. 15, 2025) (finding that a petitioner's upcoming shoulder surgery to treat bursitis *and* an age-related rotator cuff tear was not consistent with an ongoing vaccine-related injury, as the rotator cuff injury was found to be generalized and pre-existing, and the vaccine injury was thus not the predominant factor at play at the time of his surgery).

a recent steroid injection); *see also* Ex. 11 at 16-18 (an October 2023 report of pain rated at a 3/10 following surgery). Nonetheless, she thereafter continued to report staggeringly high pain levels, ranging from a 7-10 throughout the duration of her treatment, even reporting pain rated at a 10/10 during one of her final treatment visits in May of 2024. *See,* e.g., Ex. 12 at 37-38 (a March 14, 2024 pain rating of 7/10 upon discharge from PT); Ex. 14 at 4 (a May 7, 2024 pain rating of 10/10). Petitioner also experienced moderately severe limitations in ROM that impacted her ADLs, including sleeping and physical activities. *See,* e.g., Ex. 2 at 16; Exs. 10, 18.

These facts are consistent with a severe injury course. But even though Respondent contends that any treatment Petitioner received following her "successful" discharge from PT in March 2024 was motivated by litigation (Resp. at 7-8), I do not find these arguments to be fully supported by the filed record. The contemporaneous medical records show that Petitioner's injury, though improved enough for discharge from PT on March 14, 2024 (with notable findings including strength and ROM within normal limits), was not completely resolved by that time. Rather, Petitioner continued to complain of pain rated at a 7/10, described as "sharp" and "constant" at the time of discharge. Ex. 12 at 37-38. She also had only "partially met" her goals of performing ADLs (such as household chores) without pain or difficulty; she was thus instructed to perform her home exercise program upon discharge to manage these ongoing symptoms. *See id.*

Petitioner's treatment thereafter did not contain significant gaps (as Respondent appears to allege), but showed a fairly consistent course – including a May 7, 2024 post-surgical follow-up appointment two months later, during which she complained of "a lot of pain[,]" rated at a 10/10. Ex. 14 at 4. She therefore underwent a repeat MRI on May 18, 2024, showing subclinical findings commonly seen in Program SIRVA cases (i.e., mild supraspinatus and infraspinatus tendinosis) and a low-grade partial-thickness articular sided tear of the anterior fibers of the supraspinatus tendon, but an *intact* rotator cuff – thus supporting the conclusion that her October 2023 surgery was (at least) somewhat successful. Ex. 14 at 6-7; Ex. 16 at 6. Still, in response to continued complaints of pain, Petitioner's treaters found her credible and prescribed two additional steroid injections (which she received on June 4th and September 17th, 2024), that provided "minimal help." Ex. 16 at 5-6. Petitioner's receipt of these two steroid injections was not so far removed from her discharge from PT (wherein residual symptoms were noted) to be unrelated to her original injury, but rather evince a continuous injury.

While the parties were engaged in informal damages discussions around the time that Petitioner received her last two steroid injections – and the Program has often afforded statements made in pursuit of litigation less weight[6] – I do not find Petitioner's

---

[6] Special masters have often afforded less weight to statements made to treating physicians when made in the context of litigation, or those made after a petitioner began to suspect she might have a Program claim.

decision to receive this additional treatment as motivated by litigation. Instead, it appears more likely than not that her treaters believed her pain to be unresolved. This evidence thus supports a consistent injury that was ongoing through September 2024 *at the earliest*, with some residual effects.

On the other hand, while Petitioner contends that her injury is ongoing to this day (or thus through the time her Reply brief was drafted – March 2025), the evidence supporting this argument is wholly lacking from the filed record. Instead, the medical records establish ongoing vaccine-related treatment through September 2024, with lingering effects thereafter as described in her declarations. And the only evidence supporting an ongoing injury past that time is Petitioner's word alone. *See* Exs. 10, 18; Reply at 2. Petitioner even acknowledges in her Reply that the last visit for left shoulder pain contained in the medical records occurred on September 17, 2024. Reply at 2, n.2. The filed record thus establishes an injury that extended through September 2024, with some *mild* residual sequelae not requiring ongoing care. *See,* e.g., Ex. 18 at 2 (describing shoulder pain resulting in ongoing issues with sleeping, engaging in social activities – bowling, fishing, playing pool and with grandchildren).

The parties do not much dispute that the overall record supports the conclusion that Petitioner suffered a severe SIRVA requiring surgery. Respondent's offered comparable cases of *Hunt* and *Shelton* are thus largely unhelpful in calculating pain and suffering. *Hunt v. Sec'y of Health & Hum. Servs.,* No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022); *Shelton v. Sec'y of Health & Hum. Servs.,* No. 19-279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021). As has previously been noted, these two decisions stand as "outlier determinations, and rare instances of deviating from the above $100,000.00 'norm' for SIRVA cases involving surgery." *Laurette v. Sec'y of Health & Hum. Servs.*, No. 19-1047V, 2024 WL 1741611, at *5 (Fed. Cl. Spec. Mstr. Mar. 25, 2024); *see also,* e.g., *Olson v. Sec'y of Health & Hum. Servs.*, No. 21-0408V, 2024 WL 1521634, at *4 (Fed. Cl. Spec. Mstr. Mar. 4, 2024); *Gao v. Sec'y of Health & Hum. Servs.*, No. 21-1884V, 2023 WL 6182455, at *3 (Fed. Cl. Spec. Mstr. Aug. 18, 2023) (emphasizing that *Hunt* and *Shelton* were "*sui generis* instances of a sub-six figure award in SIRVA cases featuring surgery"). It is instead the case that "the policy goals of the Vaccine Program are best served if outcomes in common cases (like SIRVA vaccine injury claims) are predictable and/or subject to some uniformity – and it has been my

---

*See,* e.g., *Rastetter v. Sec'y of Health & Hum. Servs.,* No. 19-1840V, 2023 WL 5552317, at *10 (Fed. Cl. Spec. Mstr. Aug. 3, 2023) (affording little weight to a statement made after a 17-month gap in treatment, where the petitioner told the treater the return to care was at the direction of the lawyer); *Duda v. Sec'y of Health & Hum. Servs.,* No. 19-31V, 2021 WL 4735857, at *8 (Fed. Cl. Spec. Mstr. Aug. 10, 2021) (affording less weight to later statements made for the purposes of litigation that directly conflicted with earlier reports to treaters). While this does not mean that *every* petitioner who knows of the Program's existence or has a potential vaccine claim is inherently not credible, the specific factual circumstances of each case must be considered. *See Buck v. Sec'y of Health & Hum. Servs.,* No. 19-1301V, 2023 WL 6213423, at *8 (Fed. Cl. Spec. Mstr. Aug. 23, 2023).

determination that surgery cases reasonably present a degree of suffering justifying a six-figure award. (Otherwise, adjustments are always considered and made to account for the facts of each case, and in some instances even SIRVA surgery cases result in lower pain and suffering awards)." *Richardson v. Sec'y of Health & Hum. Servs.*, No. 20-0674V, 2023 WL 6180813, at *8 (Fed. Cl. Spec. Mstr. Aug. 16, 2023). Petitioner's SIRVA was not so exceptionally moderate to warrant a departure below the six-figure norm for injuries leading to surgery (and certainly not even lower such that it might fit Respondent's proposal of $100,000.00).

Additionally, the remaining cases on which Respondent relies for support (*Martin* and *Crawford*), do not provide sufficiently adequate comparisons to the facts of Petitioner's case. *Martin v. Sec'y of Health & Hum. Servs.,* No. 19-830V, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021); *Crawford v. Sec'y of Health & Hum. Servs.,* No. 19-544V, 2024 WL 1045147 (Fed. Cl. Spec. Mstr. Feb. 5, 2024). For instance, in *Martin*, the petitioner consistently described his post-vaccination shoulder pain as "mild" – even following surgery. *See* 2021 WL 2350004. The *Martin* petitioner received less treatment compared to Ms. Howard-Lucas, including only one steroid injection (versus Petitioner's six) and attended 16 PT sessions (thus approximately half the number of sessions attended by Ms. Howard-Lucas, here). *See id.* Likewise, the petitioner in *Crawford* never rated her pain above a 4/10 – thus speaking to a mild injury, whereas here Ms. Howard-Lucas consistently rated her shoulder pain at a severe level exceeding 7/10 (often rated at a 9-10/10). *See* 2024 WL 1045147. And, the *Crawford* petitioner's treatment course included a 20-month gap in care, again evincing a more mild injury than Petitioner's in this case. Thus, an award of $100,000.00 would be too low given the facts.

In her briefings, Petitioner cites a number of damages decisions involving SIRVAs, highlighting the similarities between the petitioners in those cases and her own experiences. Br. at 19-22. I will note that Petitioner's cases on which she relies upon for support contain awards both above and below her requested amount of $150,000.00, and include cases decided by another special master[7] – thus making her reliance on these set of cases somewhat inapplicable. Nonetheless, I find the comparable damages determinations offered by Petitioner to be helpful in providing a reasonable range of outcomes pertaining to the instant case ($127,500.00 - $160,000.00). But Petitioner's circumstances do not warrant an award quite as high as her requested sum (or an award as low as that awarded in some of the cases on which she relies upon for support).

---

[7] I have often noted that cases decided by other special masters (and those outside of the SPU), are deserving of slightly less weight in assessing damages in SPU cases, as I have been trying to create a unified body of law to promulgate efficient resolution of these cases while in SPU, and relying on awards from other special masters do not advance that cause to the same extent.

For example, the petitioner in *Rafferty* received a pain and suffering award of $127,500.00 for an otherwise mild injury that persisted over an eleven-month course. *Rafferty v. Sec'y of Health & Hum. Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020). The *Rafferty* petitioner underwent lesser treatment than that seen in Ms. Howard-Lucas' case, including 30 sessions of PT, one arthroscopic surgery, but *no* steroid injections. *See* 2020 WL 3495956. Despite the comparative mildness of the *Rafferty* petitioner's SIRVA in terms of severity and duration, that petitioner was justified in receiving a higher award than other similarly situated petitioners because Ms. Rafferty presented evidence establishing the significant hardship imposed on her personal circumstances as a result of their vaccine injury. *See id.* For the *Rafferty* petitioner was a mother and caretaker of young twin sons, one of whom had recently been diagnosed with autism. *See id.* It was thus conceivable that she would have experienced difficulties in caring for the children throughout the day as a result of her injury, and she experienced hardship in explaining her injury to her children. *Id.* Still, Ms. Howard-Lucas' receipt of six steroid injections must be given some weight and therefore supports a more severe injury. An award commensurate with the award in *Rafferty* is thus too low to apply herein.

On the other end of the spectrum of awards in the cases cited by Petitioner, the award of $160,000.00 warranted in *Reed* is not quite applicable here. *Reed v. Sec'y of Health & Hum. Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019). Not only was that case decided by another special master, making Petitioner's reliance somewhat misplaced, that petitioner experienced a more severe injury overall, *and* demonstrated the severe personal effect of her injury. *See* 2019 WL 1222925. For instance, the *Reed* petitioner sought consistent care within eleven days of vaccination, even reporting musculoskeletal pain to her treating gynecologist before she could get an appointment with a general practitioner. *See id.* Ms. Reed treated with prescription medications, and like Ms. Howard-Lucas, underwent surgery and multiple rounds of PT (totaling over 30 sessions). *Id.* However, the *Reed* petitioner (similar to that discussed above as to *Rafferty*), was the sole caregiver for young children, including one with special needs, thus creating an additional hardship. Ms. Reed also was forced to change her job that she had for over a decade, because she could not keep up with the physical demands required by the position as a result of her vaccine-caused shoulder injury. *See id.* While Petitioner attests to using her paid time off for medical appointments rather than enjoyment and other losses of enjoyment (e.g., Ex. 18), those circumstances are not akin to the personal hardships described in *Reed* in order to justify as high of an award.

The remaining two cases relied upon by Petitioner (involving past pain and suffering awards of $130,000.00) are wholly factually distinguishable, in that both cases involved injuries deemed *permanent* by treaters and thus involved a *future* pain and suffering component. Indeed, although neither the petitioner in *Binette* nor *Dawson-*

*Savard* underwent surgery, this was not due to the mildness of the injuries, but rather because those petitioners' injuries were declared inoperable or because their conditions were not likely to improve with surgery but had plateaued. *Binette v. Sec'y of Health & Hum. Servs.,* No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. July 8, 2019); *Dawson-Savard v. Sec'y of Health & Hum. Servs.,* No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020). The petitioners were thus compensated as if they had undergone surgery (with the addition of a future pain and suffering award) to encompass an injury that would never resolve. The same facts are not present here. Instead, Petitioner's treating physicians failed to opine that her injury was permanent, and she appeared to have experienced relief, no matter how slight, from her arthroscopic surgery and affiliated treatment (i.e., steroid injections, PT). Still, because Petitioner and the petitioners in *Binette* and *Dawson-Savard* received roughly equivalent care in terms of number of injections and completed PT sessions,[8] the fact that Ms. Howard-Lucas indeed underwent surgery lends support for a slightly larger past pain and suffering award than the $130,000.00 awarded in *Binette* and *Dawson-Savard*.

**Thus, I find that $143,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**

**CONCLUSION**

In light of all of the above, I award **Petitioner a lump sum payment of $145,657.45**, **(representing compensation for actual pain and suffering and past unreimbursable expenses) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[8] For instance, the *Binette* petitioner received five steroid injections and treated with 18 PT sessions (*see* 2019 WL 1552620); the *Dawson-Savard* petitioner received 12 injections (including steroid and trigger point lidocaine injections) and 35 PT sessions (*see* 2020 WL 4719291); Petitioner received six steroid injections and participated in 34 PT sessions.

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.